RICHEY & MILLER v. DuPRE.

1. In action for claim and delivery of personal property, a non-suit should not be granted, the plaintiff having proved possession.
2. In action against a sheriff for the recovery of a bale of cotton, which he had previously sold, or for the value thereof, and for damages, a verdict for a stated amount in money is not invalid, the form of the verdict not being objected to at the time.
3. A mere laborer for hire, although employed in the crop, is not a cultivator of the soil in the sense of the statute, and is not entitled to give an agricultural lien upon any part of the crop before settlement with his employer.
4. An employe, who is to receive a part of the crop as compensation for his services, is a laborer for hire.
5. In action at law by the purchaser of a bale of cotton, against the sheriff, for claim and delivery, the court cannot adjust the accounts between the producers of the cotton, they not being parties, one of whom had made the sale, and the other being the debtor under the lien levied.

---

Before COTHRAN, J., Abbeville, September, 1882.

The opinion states the case.

*Messrs. E. B. Gary,* and *E. G. Graydon,* for appellants.

*Mr. L. W. Perrin,* contra.

September 24th, 1883. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Basil Davis engaged Lewis Sanders to work his land in the year 1881, upon the following terms: "Davis was to furnish the stock and feed it, and after the guano was paid, Lewis was to get one-half." Richard, the father of Lewis, was in no way known in the contract, but it seems that he assisted in making the crop. Whether there was any arrangement between Lewis and Richard, and, if so, what it was, did not clearly appear. Lewis denied that there was any agreement for compensation, but it was claimed on . behalf of Richard, that for his services Lewis promised to give him half that should be made on the place; that they " were halvers in the crop."

During the year Richard got supplies from T. J. Ellis & Bros., and to secure the same, gave them an agricultural lien upon his crop. Towards the end of the year, Davis, the landlord, had a settlement with Lewis, and, in paying him, turned over to him a bale of cotton, which he (Lewis) sold and delivered to the plaintiffs, Miller & Richey. Whereupon the defendants, T. J. Ellis & Bros., claiming that the said bale of cotton in justice and equity should have gone to Richard in payment of his services in making the crop, procured an agricultural warrant on Richard's lien to them, and through the sheriff, DuPre, seized and sold the bale of cotton as part of Richard's crop. At the sale it brought $41.83, now in the sheriff's hands, and Miller & Richey brought this action "for the recovery of the said bale of cotton, or for the value thereof, in case delivery cannot be had, together with $100 damages," &c.

The case came on for trial before Judge Cothran, and under his charge the jury found for the plaintiffs $27, about half the amount for which the cotton was sold. The defendants now appeal to this court upon the following exceptions:

1. " Because his Honor refused a motion for a non-suit made by the defendants after the close of the plaintiffs' case.

2. " Because his Honor refused to charge the jury, that if Lewis Sanders was not subject to the control or authority of Basil Davis in making the crop on the land of Basil Davis in 1881, then the relation of master and servant did not exist between them, and the said Basil Davis was not the sole owner of said crop, if there was a contract between Basil Davis and Lewis Sanders, whereby the said Lewis Sanders was to receive a half or any portion of said crop for making and cultivating the same.

3. " Because his Honor refused to charge the jury when requested by defendants, 'That if Lewis Sanders and Basil Davis were joint owners of said crop, each had the right to dispose of his portion thereof, and the said Lewis Sanders had the right to make a contract with Richard Sanders, whereby he became joint owner of the share of said Lewis Sanders in said crop.' His Honor indorsed upon said request 'refused for the reason that the landlord and tenant were not joint owners; the landlord's rights were paramount till division made.'

4. " Because his Honor charged the jury that if Lewis Sanders and Richard Sanders were owners of equal shares of the crop produced, and Lewis Sanders had sold more than his share of the whole crop produced, the plaintiffs would still be entitled to recover one-half of any part of said crop purchased by them from Lewis Sanders, and seized by the sheriff, by virtue of a warrant issued to enforce payment of a lien given by said Richard Sanders on said crop.

5. " Because his Honor charged the jury that this is an action at law, and the jury should take no notice of any excess Lewis Sanders may have received over and above his share of said crop in this proceeding, although Lewis Sanders might be made to account in equity for said excess.

5. " Because his Honor charged the jury that a joint owner of personal property can, without the consent of the other joint owner, sell not only his interest, but the interest of the other joint owner of the property, and, therefore, where the sheriff levies on the interest of one joint owner of personal property, and sells the property levied upon, his sale disposes of the

interest of both joint owners and makes him liable to the other joint owner or those claiming through him for his share of said property.

7. "Because his Honor charged the jury that each joint owner of personal property is seized in and through the entire property, and that where one joint owner has disposed of more than his share of said property, the other joint owner is not allowed to retain the balance of said property, so as to make up the deficiency; that any remaining property after one joint owner has disposed of more than his share of said property, shall be divided according to the proportion which each had in the property before any part thereof was disposed of.

8. "Because his Honor erred in charging the jury that they might find a general verdict for the plaintiffs, instead of charging them that they should find specially upon the facts put in issue by defendants' answer.

9. "Because his Honor's charge utterly ignored the equitable defense set up in defendant's answer, and the equitable defense set up in the answer, not having been passed upon by the presiding judge, the judgment is null and void.

10. "Because the judgment is in all respects contrary to law and evidence."

The first exception as to the non-suit was properly withdrawn for the reason that the mere possession of the plaintiffs may have been enough to put the defendants to their proof.

Under the last general exception that "the judgment is in all respects contrary to law," it is claimed that the defendants may make the objection that the verdict was a nullity, for the reason that the action being for "claim and delivery of personal property," it should have been in the alternative, for the property, or in case a delivery cannot be had, for its value and damages for the detention. *Bardin* v. *Drafts*, 10 *S. C.* 496, and the second judgment in the case of *Eason* v. *Miller & Kelly*, 18 *S. C.* 381. But we do not regard this as necessarily an action pure and simple for the delivery of the cotton. At the time the action was brought, the cotton had already been sold, leaving only in the hands of the sheriff the proceeds of the sale. The prayer was for "the recovery of the said bale of cotton, or for

the value thereof, in case delivery cannot be had, together with $100 damages," &c. The jury rendered a verdict in favor of the plaintiffs for $27. At the time it was rendered, the defendants made no objection to the form of the verdict. As was said by the court in the case of *Joplin* v. *Carrier*, 11 *S. C.* 327, cited and followed in the case of *Williams* v. *Irby*, 16 *S. C.* 374, " the plaintiffs had a right to demand either damages for the taking and detention, as in trover for conversion, or the return of the property with damages. The code has not changed the rights of the parties in this respect. The provisions of section 301 (now 299) of the code, apply to a judgment awarding possession of personal property, not to a case where the plaintiff is entitled to general damages. It is for the plaintiff to elect which form of remedy he will pursue. We see no reason why the plaintiff could not elect to treat the case as an action for damages merely, notwithstanding the form of relief demanded by the complaint."

It is not necessary to consider the distinctions made in the other exceptions as to the relative rights of joint tenants, joint owners and partners. In the view taken by the court there is a question lying further back, which is conclusive of the case. Without considering whether Lewis was a tenant or mere employe of Davis, the landlord, there can be little doubt that Richard was a mere employe of Lewis. There was no privity between him and the landlord. He was not known in the contract with Davis. He was neither landlord, tenant nor subtenant of any part of the land. His only contract was with Lewis, who became his employer, and bound to pay him, and, therefore, he was a laborer for hire. This court has lately held, in the case of *Carpenter* v. *Strickland, ante p.* 1, that a mere laborer for hire, although employed in the crop, is not a cultivator of the soil in the sense of the act, and is not entitled to give a lien upon any part of the crop, before settlement with his employer.

This case would be perfectly plain if Richard's compensation had been in dollars instead of part of the crop. But in the view that he was to receive for his services part of the crop, it is claimed that he was something more than a mere laborer for

hire—that he was co-tenant, joint-owner or partner of Lewis, with a vested interest in the part of the crop indicated. The fact that he was to be paid in a part of the crop could not change his *status*. The part of the crop mentioned had reference only to the manner and measure of payment, while the crop, as such, remained the exclusive property of Lewis until settlement between them, which settlement alone could determine whether anything was due on the contract. As was said in the case of *Huff* v. *Watkins*, 15 · *S. C.* 85, "The fact that as an incentive perhaps, to diligent and faithful work, the compensation of the laborer is not a fixed and definite sum of money, but is made to depend upon the amount of the proceeds of his labor, cannot change the relation in which the employe has voluntarily placed himself towards his employer. It certainly cannot, as has been argued, convert the relation into that of partners or joint-owners of the crop. Until the crop is divided, it belongs to the employer, and all that the laborer is entitled to is in the nature of a chose in action, a right to demand compensation for his labor, which by the agreement, is to be measured by the amount of the crop raised. *Rogers* v. *Collier*, 2 *Bailey* 581," and other authorities.

We think that Richard had not the right to make the alleged lien to J. T. Ellis & Bros., before settlement with Lewis, and that all the proceedings under it were void.

Besides this was a law case in which only the title to the property was involved. In deciding it, the court could not, for several reasons, stop to state the account between Lewis and Richard, in order to ascertain their respective shares, especially as the contest was between strangers, and neither Lewis nor Richard were parties before the court. In our view the legal title was in Lewis and passed to his alienees. If Richard has not received his full share, his remedy is against Lewis as upon a chose in action.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

NOTE.—In connection with the foregoing case, was heard the case of Lewis Sanders against J. F. C. DuPre. DuPre, as

sheriff, under the same lien of Ellis & Bros., against Richard Sanders, levied upon some seed cotton and the ungathered crop of Lewis Sanders, and sold them for $41.83. Lewis Sanders then brought action against the sheriff and Ellis Bros., demanding the same judgment as in the principal case. The verdict was for plaintiff for about one-half of the amount claimed. From the charges and refusals to charge of Judge Cothran, the defendants appealed upon the same grounds, so far as applicable, as were raised in the appeal of *Richey & Miller* v. *DuPre*.

December 12th, 1883. The following order was passed by

THE CHIEF JUSTICE. The above-stated case having been heard, by consent of counsel, in connection with the case of *Richey & Miller* v. *DuPre*, as sheriff, and *J. T. Ellis & Bros.*, the judgment in that case is conclusive of this case. The judgment of this court is that the judgment of the Circuit Court be affirmed.